IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| WHITSERVE LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 18-193 (GMS) |
| | ) | |
| DONUTS INC. and NAME.COM, INC., | ) | |
| | ) | |
| Defendants. | ) | |
| WHITSERVE LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 18-194 (GMS) |
| | ) | |
| ENOM, LLC, | ) | |
| | ) | |
| Defendant. | ) | |

**DEFENDANTS' OPENING BRIEF
IN SUPPORT OF THEIR JOINT MOTION TO DISMISS**

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Jack B. Blumenfeld (#1014)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
jblumenfeld@mnat.com

*Attorneys for Defendants*

OF COUNSEL:

Sharon L. Davis
Nechama E. Potasnick
Nicole DeAbrantes
ROTHWELL, FIGG, ERNST & MANBECK, P.C.
607 14th Street, N.W., Suite 800
Washington, DC 20005
(202) 783-6040

May 7, 2018

## TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ................................................................................................ ii

I.      NATURE AND STAGE OF PROCEEDINGS ................................................. 1

II.     SUMMARY OF THE ARGUMENT ............................................................... 1

III.    STATEMENT OF FACTS ............................................................................... 4

IV.     ARGUMENT ................................................................................................... 7

        A.      Patent Eligibility Under 35 U.S.C. § 101 May Be Properly Decided on the
                Pleadings. .......................................................................................... 7

        B.      Legal Standard for Patent-Eligible Subject Matter ................................. 8

        C.      The Patents-in-Suit Are Directed to Ineligible Subject Matter ............... 10

                1.      Alice Step 1 .............................................................................. 10

                2.      Alice Step 2 .............................................................................. 14

                3.      Claim 1 of the '468 Patent and Claim 1 of the '078 Patent are
                        Representative of all of the claims of the Patents-in-Suit ......... 17

V.      CONCLUSION ................................................................................................ 18

TABLE OF AUTHORITIES

Page(s)

**Cases**

*Aatrix Software, Inc. v. Green Shades Software, Inc.*,
   882 F.3d 1121 (Fed. Cir. 2018) ................................................................. 8

*Accenture Glob. Servs., GmbH v. Guidewire Software, Inc.*,
   728 F.3d 1336 (Fed. Cir. 2013) ............................................................... 17

*Alice Corp. Pty. v. CLS Bank Int'l*,
   134 S. Ct. 2347 (2014) ................................................................... passim

*Ass'n for Molecular Pathology v. Myriad Genetics, Inc.*,
   133 S.Ct. 2107 (2013) ............................................................................. 9

*Audatex N. Am., Inc. v. Mitchell Int'l, Inc.*,
   703 Fed. Appx. 986 (Fed. Cir. 2017), *cert. denied* 703 Fed. App'x 986 (2018) ..................... 15

*Bancorp Servs., LLC v. Sun Life Assur. Co.*,
   687 F.3d 1266 (Fed. Cir. 2012) ................................................................. 8

*Berkheimer v. HP Inc.*,
   881 F.3d 1360 (Fed. Cir. 2018) ................................................................. 7

*buySAFE, Inc. v. Google, Inc.*,
   765 F.3d 1350 (Fed. Cir. 2014) ............................................................... 12

*Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat. Ass 'n*,
   776 F.3d 1343 (Fed. Cir. 2014) .......................................................... 14, 17

*Credit Acceptance Corp. v. Westlake Servs.*,
   859 F.3d 1044 (Fed. Cir. 2016) ............................................................... 13

*Cronos Techs., LLC v. Expedia, Inc.*,
   2015 WL 5234040 (D. Del. Sept. 8, 2015) ................................................... 17

*D&M Holdings, Inc. v. Sonos, Inc.*,
   2017 U.S. Dist. LEXIS 58790 (D. Del. Apr.18, 2017) .................................. 10, 15

*D&M Holdings, Inc. v. Sonos, Inc.*,
   2018 U.S. Dist. LEXIS 25666 (D. Del. Feb. 16, 2018) ....................................... 4

*Elec. Power Grp., LLC v. Alstom S.A.*,
   830 F.3d 1350 (Fed. Cir. 2016) ............................................................... 14

*Enfish LLC v. Microsoft Corp,*
  822 F.3d 1327 (Fed. Cir. 2016) ...................................................................... 11, 13

*Genetic Techs. Ltd. v. Merial LLC,*
  818 F.3d 1369 (Fed. Cir. 2016) ......................................................................... 7, 8

*In re TLI Communications, LLC Patent Litigation,*
  823 F.3d 607 (Fed. Cir. 2016) ..................................................................... 9, 14, 16

*Intellectual Ventures I LLC v. Capital One Bank (USA),*
  792 F.3d 1363 (Fed. Cir. 2015) .................................................................. 3, 15, 16

*Intellectual Ventures I LLC v. Symantec Corp.,*
  838 F.3d 1307 (Fed. Cir. 2016) .................................................................. 3, 13, 14

*Inventor Holdings, LLC v. Bed Bath & Beyond Inc.,*
  No. CV 14-448-GMS, 2015 WL 5000838 (D. Del. Aug. 21, 2015) ......................................... 17

*IPA Techs., Inc. v. Amazon.com, Inc.,*
  2018 U.S. Dist. LEXIS 55370 (D. Del. Mar. 31, 2018) ................................................ 17

*Mayo Collab. Servs v. Prometheus Labs., Inc.,*
  566 U.S. 66 (2012) .................................................................................. 4, 9

*McRO, Inc. v. Bandai Namco Games Am. Inc.,*
  837 F.3d 1299 (Fed. Cir. 2016) ....................................................................... 16

*OIP Techs., Inc. v. Amazon.com, Inc.,*
  788 F.3d 1359 (Fed. Cir. 2014) ........................................................................ 3

*TriPlay, Inc. v. WhatsApp Inc.,*
  2018 U.S. Dist. LEXIS 49953 (D. Del. Mar. 27, 2018) ............................................... 7, 8

*Two-Way Media Ltd v. Comcast Cable Communs., LLC,*
  874 F.3d 1329 (Fed. Cir. 2017) ..................................................................... 12, 13

*Ultramercial, Inc. v. Hulu, LLC,*
  772 F.3d 709 (Fed. Cir. 2014) ...................................................................... 7, 14

*Voter Verified, Inc., v. Election Systems & Software LLC,*
  No. 17-1930, 2018 WL 1882917 (Fed. Cir. Apr. 20, 2018) .............................................. 17

## Statutes

35 U.S.C. § 101 ................................................................................ passim

Fed. R. Civ. P. 12(b)(6) ............................................................................ 1

## I.     NATURE AND STAGE OF PROCEEDINGS

Plaintiff, WhitServe LLC ("WhitServe"), filed these actions against Donuts Inc.,

Name.com, Inc., and Enom, LLC (collectively "Defendants"), on February 1, 2018, asserting

infringement of U.S. Patent No. 5,895,468 (the "'468 Patent") and U.S. Patent No. 6,182,078

(the "'078 Patent") (collectively the "Patents-In-Suit").   Discovery has not yet begun, nor has a

case schedule been entered.   Defendants jointly move to dismiss these actions under Fed. R. Civ.

P. 12(b)(6) because the claims of the '468 Patent and the '078 Patent are invalid as directed to

patent-ineligible subject matter.

## II.     SUMMARY OF THE ARGUMENT

The Supreme Court has set forth a two-step inquiry for performing patent eligibility

under 35 U.S.C. § 101: are claims directed to an abstract idea; and, if so, do they recite an

inventive concept that amounts to significantly more than a patent upon the abstract idea itself?

*See Alice Corp. Pty. v. CLS Bank Int'l*, 134 S. Ct. 2347, 2352 (2014).   Because claims that do no

more than implement such known business practices on a generic computer are plainly not patent

eligible under the *Alice* inquiry, WhitServe's infringement claims should be dismissed.   *See*

*Alice*, 134 S. Ct. at 2352 (holding that putting known business practice of intermediated

settlement on computers was not patent eligible).

Since the earliest days of the profession, lawyers have calendared their client's upcoming

due dates and, when those dates neared, communicated with the client about the upcoming date

and how the client wished to proceed.   In the Patents-in-Suit, WhitServe seeks to patent

performing these fundamental steps of providing professional services on a standard computer.[1]

---

[1] WhitServe has taken the position that its claims are not even limited to the provision of
"professional services" but apply to all commercial activities.   If that view of the claims were
adopted, the abstract idea to which these claims are directed would encompass even more

The shared specification of the '468 Patent and the '078 Patent demonstrates that the claimed invention is directed to an abstract idea:  reminding clients of needed professional services based on upcoming due dates and communicating with clients to receive their responses to those reminders.  The specification acknowledges that those claimed steps were already performed in the professional world, where "oftentimes an attorney must send a client a reminder, obtain authorization or possibly executed documents from the client and then take some action based on the client's response." Ex. 1 at 1:12-16; Ex. 2 at 1:17-21.[2] The specification identifies existing prior art solutions such as docketing systems that reduced the degree of human action required to perform the professional services, but did not remove it entirely. Ex. 1 at 1:27-46; Ex. 2 at 1:32-51. Thus, a core goal of the Patents-in-Suit is to use computers and the Internet to automate a process that could otherwise be performed by a human manually. *See* Ex. 1 at 2:6-14; Ex. 2 at 2:22-32.

This automation is concededly to be carried out on generic computers using generic networks. Ex. 1, at 2:35-45; Ex. 2, at 2:60-3:2 ("objects of the invention are achieved by provision of a device…includ[ing] a computer and a database" and "software…for automatically transmitting the client response form…through a communication link between the computer and Internet").  The specification does not identify any improvement upon known networks, the Internet or general-purpose computers.  Instead, it makes plain that the claimed invention only seeks to "improve[] the speed, efficiency, and reliability of performing services for clients" by automating an age-old process and using the Internet for communications. Ex. 1 at 2:16-18; Ex. 2 at 2:36-38.  Nor do the Complaints contain any factual allegations concerning the technological

commonplace business activities practiced by dry cleaners, gyms, rental companies and any other business that reminds customers when they have an upcoming renewal or due date.
[2] Copies of the '468 Patent and the'078 Patent are attached as Exhibits 1 and 2, respectively.

nature of the invention, or suggesting that the invention improves upon any of the computer technology used in its implementation.  In short, there is no factual dispute that the Patents-in-Suit claim the use of routine and conventional computer technology to automate providing professional services.

The Supreme Court established in *Alice* that claims reciting the automation of known business methods using conventional technology are directed to an abstract idea.  Indeed, *Alice* itself held that claims directed to automating intermediated settlements were directed to an abstract idea.  134 S. Ct. at 2352.  Where the main object of the patent is to reduce the costs and inefficiency associated with human actions by applying a computer—or, as in the Patents-in-Suit, to "to improve the speed, efficiency and reliability of performing professional services" (Ex. 1 at 2:8-9, Ex. 2 at 2:25-26)—the claims fall squarely within the realm of abstract ideas.  Indeed, the Federal Circuit has repeatedly held that patent claims that seek to cover business practices implemented using standard computer technology constitute impermissible efforts to patent abstract ideas.  *See, e.g.*, *Intellectual Ventures I LLC v. Symantec Corp.*, 838 F.3d 1307, 1319-22 (Fed. Cir. 2016) ("[V]irus screening is well-known and constitutes an abstract idea."); *Intellectual Ventures I LLC v. Capital One Bank (USA)*, 792 F.3d 1363, 1367-68 (Fed. Cir. 2015) ("tracking financial transactions to determine whether they exceed a pre-set spending limit (i.e., budgeting)" is an abstract idea that "is not meaningfully different from the ideas found to be abstract in other cases ... involving methods of organizing human activity"); *OIP Techs., Inc. v. Amazon.com, Inc.*, 788 F.3d 1359, 1360, 1362-64 (Fed. Cir. 2014) (methods of offer-based price optimization in e-commerce environment were drawn to an abstract idea).

The Complaints also lack any factual allegations suggesting that the claims of the Patents-in-Suit disclose an inventive concept sufficient to make the claimed abstract idea into a

patent-eligible invention. The single supposed "innovation" of the invention, as stated in the specification, is to automate the administrative tasks of providing reminders to client of needed professional services and receiving their responses. Using a computer to automate a business practice does not amount to an inventive concept. *See Alice*, 134 S. Ct. at 2352 ("[s]imply appending conventional steps, specified at a high level of generality, is not enough to supply an inventive concept." (quoting *Mayo Collab. Servs v. Prometheus Labs., Inc.*, 566 U.S. 66, 82 (2012)); *D&M Holdings, Inc. v. Sonos, Inc.*, 2018 U.S. Dist. LEXIS 25666 at *17 (D. Del. Feb. 16, 2018) (finding that the claim "provides no inventive concept, and at most merely automates the abstract idea through the use of a generic, conventional technology.") (internal quotations omitted).

Because the claims of the Patents-in-Suit fail to meet the test set forth in *Alice* for patent eligibility, these actions should be dismissed.

## III.    STATEMENT OF FACTS

The '468 Patent was filed on October 7, 1996. The '078 Patent was filed on December 2, 1999, and is a continuation of U.S. Patent No. 6,049,801, which is a continuation-in-part of the '468 Patent. Thus, both patents expired more than a year before these actions were filed. The Complaints allege that Defendants infringe four independent claims in the Patents-in-Suit, claims 1 and 24 of the '468 Patent and claims 1 and 9 of the '078 Patent. The Complaints further allege that Defendants infringe dependent claims 3 and 11 of the '078 Patent.

The claims of the Patents-in-Suit are directed to devices or methods of automatically delivering professional services by querying a database containing client reminders, generating a client response form based on a reminder and transmitting it to the client.

Claim 1 of the '468 Patent recites:

1. A device for automatically delivering professional services to a client comprising:

a computer;

a database containing a plurality of client reminders, each of the client reminders comprising a date field having a value attributed thereto;

software executing on said computer for automatically querying said database by the values attributed to each client reminder date field to retrieve a client reminder;

software executing on said computer for automatically generating a client response form from the retrieved client reminder;

a communication link between said computer and the Internet;

software executing on said computer for automatically transmitting the client response form to the client through said communication link; and

software executing on said computer for automatically receiving a reply to the response form from the client through said communication link.

Ex. 1, Claim 1. Claim 1 of the '078 Patent recites:

1. A device for automatically delivering professional services to a client comprising:

a computer;

a database containing a plurality of client reminders, each of the client reminders comprising a date field having a value attributed thereto;

software executing on said computer for automatically querying said database by the values attributed to each client reminder date field to retrieve a client reminder;

software executing on said computer for automatically generating a form based on the retrieved client reminder;

a communication link between said computer and the Internet;

software executing on said computer for automatically transmitting the form to the client through said communication link.

Ex. 2, Claim 1.

Claim 1 of the '468 Patent and claim 1 of the '078 Patent each recite four main components ("a computer", "a database containing a plurality of client reminders", "software" and "a communication link") within the device for automatically providing professional services. The specification makes plain that each of these components is a generic computer or network component. *See, e.g.,* Ex. 1 at 2:37-45 (describing use of "computer" and "software" that allows for "a communication link between the computer and the Internet"); 3:64-66 ("Internet communication link" and "internal communications over a computer network"); *see also* Ex. 2 at 2:62-3:2; 4:16-19. Each claim also recites that the "software" be configured for "automatically querying said database…", "automatically generating a…form…" and "automatically transmitting the…form to the client…". The Complaints assert that "automatically" is interpreted broadly to mean "a process that, once initiated, functions without further human intervention to accomplish functions or steps designated."  Complaint (D.I. 1) ¶ 21.  The main difference between these two claims is that claim 1 of the '468 Patent recites the additional limitation of automatically receiving a reply from the client.

The other asserted independent claims in the '468 Patent (claim 24) and the '078 Patent (claim 9) differ from the representative claims only in one regard: the claims are directed towards a method for automatically delivering professional services instead of a device for doing so. Dependent claim 3 in the '078 Patent narrows the device of claim 1 by limiting the said form to a webpage. Similarly, claim 11 of '078 Patent narrows the method in claim 9 by requiring that the generating step include the generating of a webpage.

There are additional independent claims in the Patents-in-Suit, two in the '468 Patent (claims 5, and 9)[3] and two in the '078 Patent (claims 4 and 7)[4], all of which are directed to the same idea of automatically delivering professional services to a client but contain narrowing limitations that WhitServe has not asserted are infringed by Defendants. Therefore, Defendants do not address their lack of patentable subject matter herein. Should WhitServe raise such allegations, Defendants would address the patent ineligibility of those claims at that time.

## IV.   ARGUMENT

### A.   Patent Eligibility Under 35 U.S.C. § 101 May Be Properly Decided on the Pleadings.

Patent eligibility under Section 101 is suitable for resolution at the pleadings stage. *See TriPlay, Inc. v. WhatsApp Inc.,* 2018 U.S. Dist. LEXIS 49953, at \*13-14 (D. Del. Mar. 27, 2018) (citing *Berkheimer v. HP Inc.*, 881 F.3d 1360, 1368 (Fed. Cir. 2018)); *Genetic Techs. Ltd. v. Merial LLC*, 818 F.3d 1369, 1373-74 (Fed. Cir. 2016) (*cert. denied*, 137 S. Ct. 242 (2016)  ("We have repeatedly recognized that in many cases it is possible and proper to determine patent eligibility under 35 U.S.C. § 101 on a Rule 12(b)(6) motion."); *Ultramercial, Inc. v. Hulu, LLC*, 772 F.3d 709, 713 (Fed. Cir. 2014). Patent eligibility may be decided on a motion to dismiss as a matter of law "[w]hen there is no genuine issue of material fact regarding whether the claim element or claimed combination is well-understood, routine, conventional to a skilled artisan in the relevant field." *Berkheimer*, 881 F.3d at 1368.

---

[3] Claim 5 is directed towards a device that includes a docket database containing a plurality of client reminders whereby the client reminder includes a matter identification number. Claim 9 recites a device comprising a webserver and whereby the software automatically transmits a response form to the client when a URL is activated.

[4] Claim 4 is directed towards a device comprising a docket database containing a docket database containing a plurality of client reminders whereby the client reminder includes a matter identification number; and a forms database containing a plurality of forms. Claim 7 is directed towards a device comprising a webserver and whereby the software automatically transmits a form to the web server and automatically transmits a notice.

Here, the claim language and the specification fully describe the nature of the invention, and WhitServe's Complaints lack any factual allegations suggesting that the claims of the Patents-in-Suit provide any technological improvement to the functioning of the computer or use the computers at issue in any unconventional way. *See generally* Complaint (D.I. 1); Ex. 1, 1:11-2:62.  In the absence of any allegations raising a factual dispute as to the abstract nature of the claimed invention, determination of patent eligibility on a motion to dismiss is proper. *TriPlay*, 2018 U.S. Dist. LEXIS 49953, at *21 (granting motion to dismiss where neither "the specification [n]or [the complaint] disclose any specific improvement the patentees invented.").

Evaluation of a patent claim's subject matter eligibility under § 101 also does not require claim construction.  *See Genetic Techs.*, 818 F.3d at 1374; *Bancorp Servs., LLC v. Sun Life Assur. Co. of Canada (U.S.)*, 687 F.3d 1266, 1273-74 (Fed. Cir. 2012) (claim construction not prerequisite for determining § 101 motion if the Court has a "full understanding of the basic character of the claimed subject matter").  That is particularly true where, as here, the patentee has included in the Complaints its proposed constructions of the claim terms.  *See, e.g.,* Complaint (D.I. 1) ¶¶ 19-21 (defining "a computer," "a database," "client reminder," and "automatically.").  In that case, the Court may simply evaluate patent eligibility based on the claim constructions advanced by the patentee.  *See Aatrix Software, Inc. v. Green Shades Software, Inc.*, 882 F.3d 1121 (the Court may proceed to resolve eligibility issues on motion to dismiss "by adopting the non-moving party's constructions").

Because there are no factual disputes to be resolved that would bear on the issue, the Court may decide patent eligibility on Defendants' Motion to Dismiss.

### B.    Legal Standard for Patent-Eligible Subject Matter

Section 101 confers patent eligibility for "any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof."  35 U.S.C.

§ 101.  The Supreme Court "has long held that this provision contains an important implicit exception" that "[l]aws of nature, natural phenomena and abstract ideas are not patentable." *In re TLI Commc'ns, LLC Patent Litig.*, 823 F.3d 607, 611 (Fed. Cir. 2016) (*citing Ass'n for Molecular Pathology v. Myriad Genetics, Inc.*, 133 S. Ct. 2107, 2116 (2013)).

In *Alice*, the Supreme Court explained that patent law does not allow for the monopolization of abstract ideas because they are the "building blocks of human ingenuity." *Alice*, 134 S. Ct. at 2359.  *Alice* set forth a two-part test to determine patentability under Section 101.  The first step requires the Court to evaluate the claims "[o]n their face" to determine whether the "concept" the claims are "drawn" to is abstract.  *Id.* at 2356.  If so, the Court proceeds to the second step, where it must determine whether the claims contain an "'inventive concept'—i.e., an element or combination of elements that is sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the [ineligible concept] itself." *Id.* (alteration in original) (quoting *Mayo*, 132 S. Ct. at 1294). With respect to the second step, the "mere recitation of a generic computer cannot transform a patent-ineligible abstract idea into a patent-eligible invention," *Alice*, 134 S. Ct. at 2358, because applying an abstract idea on a generic computer is "not enough for patent eligibility." *Id.*  Expanding on that idea, the Court observed that, "[g]iven the ubiquity of computers, wholly generic computer implementation is not generally the sort of 'additional featur[e]' that provides any 'practical assurance that the process is more than a drafting effort designed to monopolize the [abstract idea] itself.'" *Id.* (internal citations omitted) (quoting *Mayo*, 132 S. Ct. at 1297).  Applying these principles, this Court has held that "neither '[a] simple instruction to apply an abstract idea on a computer,' nor 'claiming the improved speed or efficiency inherent with applying the abstract idea on a computer' satisfies the requirement of an 'inventive concept.'" *D&M Holdings, Inc. v. Sonos,*

*Inc.*, 2017 U.S. Dist. LEXIS 58790 at *13 (D. Del. Apr.18, 2017) (*quoting Intellectual Ventures*, 792 F.3d at 1367).

### C.     The Patents-in-Suit Are Directed to Ineligible Subject Matter

#### 1.     *Alice Step 1*

The claims of the Patents-in-Suit are directed to the abstract idea of reminding clients of needed professional services based on upcoming due dates and communicating with the clients to receive their responses to those reminders. As the specification explains, the invention relates to "a device and method for use by professionals" for "performing services to clients" which involve "prepar[ing] reminders and solicit[ing] replies for client due dates." Ex. 1 at 2:17-22; Ex. 2 at 2:37-42.  The goal of the patents, therefore, is to provide a device and method for "automating delivery of professional services to a client." Ex. 1 at 2:57-58; Ex. 2 at 3:4-5.  Other systems had already been developed, as the specification acknowledges, which had "facilitate[ed] some of the function which professionals perform" but those systems "aid in only one of many steps which the professional must perform[.]" Ex.1 at 1:27-37; Ex. 2 at 1:33-43. Moreover, the specification describes that those prior systems did not "employ modern computer communications media, such as the Internet."  Ex.1 at 1:54-56; Ex. 2 at 1:59-61.

The claims of the Patents-in-Suit lack any technological specificity and seek to encompass any computer systems that "automatically" deliver professional services. The Complaints allege that these claims apply broadly to computer systems that "automatically remind customers of the upcoming expiration dates of their domain name registrations" and "receive customer instructions for renewal of domains." *See*, e.g. Complaint (D.I. 1) ¶ 22. The Complaints allege that "automatically" means "a process that, once initiated, functions without further human intervention to accomplish functions or steps designated." *See* Complaint (D.I. 1) ¶ 26.  WhitServe's factual allegations provide no explanation as to how such automation is

10

implemented but instead merely states that it is "without further human intervention." *Id*. The components recited in the claims also do not help provide any specificity, as the components themselves are generic. Ex. 1, claim 1 ("a computer", "database", "software" and "a communications link between said computer and the Internet"); Ex. 2, claim 1 (same). The claim elements do not contain any limitations as to the type of computer, database, or communication link between the computer and Internet that can be used. *See* Ex. 1, claim 1; Ex. 2, claim 1. The dependent claims are not limited to a specific innovative technology and instead encompass many forms of electronic communications. *See*, e.g. Ex. 2, claim 2 ("the form is an email message"); claim 3 ("the form is a web page"). Thus, the claims seek to encompass automating professional services in any technological environment using standard computer technology.

The Federal Circuit in *Enfish LLC v. Microsoft Corp.* clarified that the step one *Alice* inquiry requires the Court "to ask whether the claims are directed to an improvement to computer functionality versus being directed to an abstract idea." 822 F.3d 1327, 1335 (Fed. Cir. 2016). In doing so, the Federal Circuit distinguished the claims before it as directed to improving the functioning of a computer from claims that "simply add[] conventional computer components to well-known business practices." *Id.* at 1338.

The focus of WhitServe's claims is to "improve the speed, efficiency, and reliability of performing services for clients" (Ex. 1 at 2:17-19; Ex. 2 at 2:37-39) by automating age-old business practices. The tasks of reminding clients of needed professional services based on upcoming due dates and receiving client responses to those reminders are as old as the law itself. As a young lawyer, Abraham Lincoln surely provided reminders to clients of looming court dates and received a client's response before moving forward with the matter. The claims recite automating these tasks by implementing them on general purpose computers using basic

computer technology and functions. *See, e.g.,* Ex. 1, claim 1 and Ex. 2, claim 1 ("a computer", "a database", "software" and "a communications link between said computer and the Internet").

The Complaints contain no factual allegations suggesting that the claims recite any elements that improve computer functionality. Furthermore, as evidenced by the claim language itself, the claims require only the most basic of computer functions: automatically querying a database; automatically generating a form; and transmitting the form through a communications link. *Two-Way Media Ltd v. Comcast Cable Communs., LLC*, 874 F.3d 1329, 1340-41 (Fed. Cir. 2017) ("processing data streams, transmitting them from 'an intermediate computer,' and then confirming certain information about the transmitted data" do not "require[] anything other than conventional computer and network components operating according to their ordinary functions"). Claim 1 of the '468 Patent contains the additional limitation of automatically receiving a reply to the form from the client. However, this limitation does not provide anything more than another generic computer function. *See buySAFE, Inc. v. Google, Inc.*, 765 F.3d 1350, 1355 (Fed. Cir. 2014) ("That a computer receives and sends the information over a network—with no further specification—is not even arguably inventive.").

The specification also makes no reference to any computer functionality improvement and, to the contrary, makes plain that the claims simply add conventional computer technology to a business practice. *See, e.g.*, Ex. 1 at 1:10 to 2:14, 2:32-63; Ex. 2 at 1:16-2:32. The abstract nature of the invention is further evidenced by the prosecution history of the '468 Patent, where in order to overcome the prior art, WhitServe emphasized that the focus of the invention was on the automation of professional services. *See* Ex. 3, Office Action Response, Serial No. 08/726,999 (June 8, 1998) ("[n]either piece of prior art teaches or suggests the automating of

professional services themselves"). There is no genuine dispute that the asserted claims are directed to an abstract idea that is implemented on a computer.

The abstract idea here is analogous to those found patent-ineligible by the Federal Circuit.  In *Intellectual Ventures I*, the court said that because "it was [a] long-prevalent practice for people receiving paper mail to … discard certain letters, without opening them," if perceived as junk mail, that applying that idea to *electronic* mail was also abstract.  838 F.3d at 1314.  Here, the specification concedes that it was routine for professionals to "send a client a reminder, obtain authorization or possibly executed documents from the client, and then take some action based on the client's response." Ex. 1 at 1:13-16; Ex. 2 at 1:18-21. Modernizing that routine practice for the computer age does not make it patent eligible.

Likewise, in *Credit Acceptance Corp. v. Westlake Servs.*, the court explained that "[o]ur prior cases have made clear that mere automation of manual processes using generic computers does not constitute a patentable improvement in computer technology." 859 F.3d 1044, 1055 (Fed. Cir. 2016). Distinguishing *Enfish*, the court then held the claims to be patent ineligible, concluding that the claimed invention consisted of programming a computer to perform steps of an abstract idea and did not improve computer function. *Id*. Similarly, here, the entire focus of the asserted claims is to automate the functions that professionals admittedly already manually performed when providing services to clients. Automatically generating forms based on a reminder and transmitting the forms over a standard communication link, as described in claim 1 of each patent, are classic examples of common computer capabilities and as such do not improve computer function. *See Two-Way Media*, 874 F.3d at 1337 (claims directed to the abstract idea of sending, directing, monitoring information over a network not patent-eligible).

13

Because the claims of the Patents-in-Suit do not improve the function of the computers or networks, but rather are directed to automatically providing reminders of upcoming professional services and response forms using standard technology, they are directed to an abstract idea.

2.   ***Alice Step 2***

Once it has been determined that the asserted claims of the Patents-in-Suit are directed to an abstract idea, the next step in the analysis is to determine whether they add anything "sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the abstract idea itself." *Alice*, 134 S. Ct. at 2355 (internal quotations omitted).  It is well-settled that limitations requiring the use of standard computer hardware such as servers or networked computers do not supply an inventive concept with respect to an otherwise abstract idea.  *See Alice,*134 S. Ct. at 2358 (generic computer limitations cannot constitute inventive concept); *In re TLI*, 823 F.3d at 612-13 (no patentability where computer technology "perform[ed] generic computer functions such as storing, receiving and extracting data"); *Intellectual Ventures I*, 838 F.3d at 1320; *Elec. Power Grp., LLC v. Alstom S.A.*, 830 F.3d 1350, 1355 (Fed. Cir. 2016) (finding patent ineligibility where the claims did not "require[] anything other than off-the-shelf, conventional computer, network, and display technology for gathering, sending, and presenting the desired information"); *Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat. Ass 'n*, 776 F.3d 1343, 1348 (Fed. Cir. 2014) (generic scanner and computer performed the "well-understood, routine and conventional activities" of recognizing and storing data and did not confer patentability); *Ultramercial, Inc. v. Hulu, LLC,* 772 F.3d at 716 ("the use of the Internet is not sufficient to save otherwise abstract claims from ineligibility under § 101").

The supposed "innovation" of the Patents-in-Suit, by their own telling, is to automate the business practices of reminding clients of needed professional services based on upcoming due dates and communicating with clients to receive their responses (*i.e.,* apply an abstract idea on a

14

computer), with the advantage of reducing the number of functions requiring human action as compared to earlier systems that had already begun to automate the client reminder process. This type of "innovation" does not supply an inventive concept. *See D&M Holdings*, 2017 U.S. Dist. LEXIS 58790, at *13 (*citing Intellectual Ventures*, 792 F.3d at 1367).

The components recited in the asserted claims—"a computer,", "a database", "software" and "a communication link between the computer and the Internet"—are wholly generic and perform common functions that every computer performs. *See Audatex N. Am., Inc. v. Mitchell Int'l, Inc.*, 703 Fed. Appx. 986, 990 (Fed. Cir. 2017), *cert. denied* 703 Fed. App'x 986 (2018) (finding the patent ineligible where the claims "merely recite[d] a host of generic computer components" including "web pages, a client computer, an electronic communication network, a database, [and] a web server") (internal quotations omitted).  The specification does not describe any improvement as to these components, instead making clear that they are generic, conventional computer technology.  For example, the specification recites computers (1:37), databases (1:38), software (1:39), a communication link (1:44) and assumes (correctly) that the skilled person understands what these components are and does not further limit them. *See* Ex. 1 at 1:37-39, 44. As the specification describes, the "software" must only be capable of querying a database by date to retrieve a reminder, generating a response form, transmitting the response form and receiving a reply – which are all functions of generic computer software. The communication link is any link capable of transmitting data between the Internet and a computer – which is essentially the definition of a communication link.  Complaint (D.I. 1) ¶ 32.  None of the asserted computer technology is disclosed to perform any functions other than the standard computer functions of querying, generating, transmitting and receiving information. Thus, the claims do not describe a device or method that improves the relevant technology but are instead

"directed to a result or effect [*i.e.*, automating the delivery of professional services] that itself is the abstract idea and merely invoke generic processes and machinery." *McRO, Inc. v. Bandai Namco Games Am. Inc.*, 837 F.3d 1299, 1314 (Fed. Cir. 2016).

Considering the claims as an ordered combination also fails to supply an inventive concept.  The asserted claims recite a conventional ordering of steps: (1) automatically querying a database; (2) automatically generating a form; and (3) transmitting the form through a communications link, which whether considered individually or as an ordered combination, are nothing more than an abstract idea. None of the steps add anything "significantly more" than the abstract idea but instead merely describe "well-understood, routine, conventional activities" performed by generic computer components. *See Alice*, 134 S. Ct. at 2355, 2359; *Intellectual Ventures I*, 792 F.3d at 1367-68 ("Steps that do nothing more than spell out what it means to 'apply it on a computer' cannot confer patent-eligibility."). Neither the specification nor the Complaints include any factual allegations that the order or arrangement of the claimed steps constitutes an inventive concept.

Taken together, the functions performed by computer-related components in the claims fall well short of creating a basis for patentability.  *See In re TLI*, 823 F.3d at 611-13.  This case presents a classic example of a patent that describes an abstract idea and then provides instructions to do it on a generic computer.  *See Alice*, 134 S. Ct. at 2358 (if a patent's recitation of a computer amounts to a mere instruction to "implemen[t]" an abstract idea "on . . . a computer," that addition cannot impart patent eligibility).  Without any inventive concept being added to the abstract idea for reminding clients of needed professional services based on upcoming due dates and communication with clients to receive their responses to those

16

reminders, the claims of the Patents-in-Suit fail the second step of the *Alice* analysis and, therefore, are not patent eligible.

3.   ***Claim 1 of the '468 Patent and Claim 1 of the '078 Patent are Representative of all of the claims of the Patents-in-Suit***

This Court "is not required to individually address claims not asserted or identified by the non-moving party, so long as the court identifies a representative claim and 'all the claims are substantially similar and linked to the same abstract idea.'" *IPA Techs., Inc. v. Amazon.com, Inc.*, 2018 U.S. Dist. LEXIS 55370 at *8-9 (D. Del. Mar. 31, 2018) (quoting *Content Extraction*, 776 F.3d at 1348 (internal quotation marks omitted)); *see also Inventor Holdings, LLC v. Bed Bath & Beyond Inc.*, No. 14-448-GMS, 2015 WL 5000838, at *1 n.2 (D. Del. Aug. 21, 2015) ("The court concludes that the claims are directed to the same abstract idea such that addressing each claim [is] not necessary"); *Cronos Techs., LLC v. Expedia, Inc.*, 2015 WL 5234040 (D. Del. Sept. 8, 2015) (defining question as "do all of the challenged claims relate to the same abstract idea and do any of the non-representative claims add one or more inventive concepts that would result in patent eligibility?").

The Federal Circuit has repeatedly recognized that device and method claims need not be addressed separately when they "contain only 'minor differences in terminology [but] require performance of the same basic process.'" *Accenture Glob. Servs., GmbH v. Guidewire Software, Inc.*, 728 F.3d 1336, 1344 (Fed. Cir. 2013) ("While it is not always true that related system claims are patent-ineligible because similar method claims are, when they exist in the same patent and are shown to contain insignificant meaningful limitations, the conclusion of ineligibility is inescapable."); *Voter Verified, Inc., v. Election Systems & Software LLC*, No. 17-1930, 2018 WL 1882917, at *6 (Fed. Cir. Apr. 20, 2018) (finding that while the claims

encompass both methods and systems, there is "no distinction between them for § 101 purposes, as they simply recite the same concept.") (internal citations omitted).

Claim 1 of the '468 Patent is representative of all the asserted claims for that patent because claim 24 is merely directed towards the method carried out by the device in claim 1. Thus, Claim 1 and 24 require performance of the same process.

Likewise, claim 1 of the '078 Patent is representative of all the asserted claims for that patent.  Independent claim 9 is directed towards the method carried out by the device recited in claim 1 and, therefore, there is no distinction between them for § 101 purposes. Claim 3 depends from claim 1 and adds only the limitation that the claimed "form" be a web page. Claim 11 depends from claim 9 and adds a similar limitation that the "generating step" further comprises generating a webpage. As a web page is a common and well-known feature in computer technology, the limitations in claims 3 and 11 lack any technological innovation to the invention and do not impact the § 101 analysis.

In sum, claim 1 of each of the Patents-in-Suit is representative of the asserted claims for that patent. All of the other claims at issue differ in minor ways that fail to transform the underlying abstract idea into patent-eligible subject matter.

## V.      **CONCLUSION**

For the foregoing reasons, Defendants respectfully request that the Court find the claims of the Patents-in-Suit invalid under 35 U.S.C. § 101 and dismiss the Complaints for failure to state a claim.

18

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Jack B. Blumenfeld*

Jack B. Blumenfeld (#1014)
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200
jblumenfeld@mnat.com

*Attorneys for Defendants*

OF COUNSEL:

Sharon L. Davis
Nechama E. Potasnick
Nicole DeAbrantes
ROTHWELL, FIGG, ERNST & MANBECK, P.C.
607 14th Street, N.W., Suite 800
Washington, DC 20005
(202) 783-6040

May 7, 2018

### <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on May 7, 2018, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF, which will send notification of such filing to all registered participants.

I further certify that I caused copies of the foregoing document to be served on May 7, 2018, upon the following in the manner indicated:

Stamatios Stamoulis, Esquire                              *VIA ELECTRONIC MAIL*
STAMOULIS & WEINBLATT LLC
Two Fox Point Centre
6 Denny Road, Suite 307
Wilmington, DE  19809
*Attorneys for Plaintiff*

Michael J. Kosma, Esquire                                *VIA ELECTRONIC MAIL*
Natasha Rodriguez, Esquire
WHITMYER IP GROUP LLC
600 Summer Street
Stamford, CT  06901
*Attorneys for Plaintiff*

/s/ *Jack B. Blumenfeld*
_____
Jack B. Blumenfeld (#1014)