IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| WHITSERVE LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civ. No. 18-193-CFC |
| | ) | |
| DONUTS INC. and NAME.COM, INC., | ) | |
| | ) | |
| Defendants. | ) | |

| | | |
|---|---|---|
| WHITSERVE LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civ. No. 18-194-CFC |
| | ) | |
| ENOM, LLC, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM**

In February 2018, plaintiff WhitServe LLC ("WhitServe") brought separate patent infringement actions against Donuts Inc., along with its subsidiary Name.com, Inc., and eNom, LLC (collectively, the "Defendants"). C.A. No. 18-193 at D.I. 1; C.A. No. 18-194 at D.I. 1. WhitServe alleges that Defendants

infringe U.S. Patent Nos. 5,895,468 ("the #468 patent") and 6,182,078 ("the #078 patent") which are titled, respectively, "System Automating Delivery of Professional Services" and "System for Delivering Professional Services Over the Internet." The Court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a). Defendants have moved to dismiss the complaints pursuant to Federal Rule of Civil Procedure 12(b)(6) on the grounds that the patents recite patent ineligible subject matter under 35 U.S.C. § 101. C.A. No. 18-193 at D.I. 12; C.A. No. 18-194 at D.I. 10. For the reasons discussed below, I will grant Defendants' motions.

## I.   BACKGROUND[1]

The complaints allege that Defendants infringe claims 1 and 24 of the #468 patent and claims 1, 3, 9, and 11 of the #078 patent. D.I. 1 at ¶¶ 22, 31. Only claims 3 and 11 of the #078 patent are dependent. D.I. 1-2. All the remaining claims are independent. *Id.*; D.I. 1-1. The #468 and #078 patents share a common written description that was first filed on October 7, 1996. D.I. 1 at ¶ 13.

As the patents-in-suit explain, attorneys and other professionals have to perform many functions that "involve a series of deadlines" and these functions cannot be completed without client authorization or action. D.I. 1-1 at 1:11-16.

---

[1]  Unless otherwise noted, the citations herein are to WhitServe's complaint in C.A. No. 18-193 and the exhibits attached to that complaint, all of which are essentially identical to the complaint and exhibits in C.A. 18-194.

Before the invention disclosed in the patents-in-suit, professionals relied on a docketing system, "which typically contains a database of deadlines," that "notifies the professional of each upcoming deadline a preset time period before the deadline by printout, attached terminal, or networked computer." *Id.* at 1:28-35. A disadvantage of the docketing system, however, was that it provided "aid in only one of the many steps which the professionals must perform." *Id.* at 1:36-38. Professionals still had to spend "countless hours attempting to contact busy clients by telephone or by writing multiple letters attempting to elicit a response from the client." *Id.* at 1:21-23, 40-53. The entire process of sending clients a reminder and obtaining a timely response is "often time-intensive, costly, and tedious." *Id.* at 1:19-20.

The patents-in-suit purport to solve these problems by disclosing "an automated system for obtaining authorizations from clients prior to deadlines which will improve the speed, efficiency, and reliability of performing professional services for clients." *Id.* at 2:6-9. The system is comprised of a computer, a database, software, and a communication link with the Internet. *Id.* at 6:54-7:8. As the patents-in-suit explain, the advantage of a system "in which communications between the professional and the client take place over the Internet" is that "[t]hese technologies greatly decrease the costs and increase the timeliness of communication." *Id.* at 1:58-2:14.

3

Claim 1 of the #468 patent, which may be considered representative of all claims in the #468 patent family, recites:[2]

> A device for automatically delivering professional services to a client comprising:
>
> a computer;
>
> a database containing a plurality of client reminders, each of the client reminders comprising a date field having a value attributed thereto;
>
> software executing on said computer for automatically querying said database by the values attributed to each client reminder date field to retrieve a client reminder;
>
> software executing on said computer for automatically generating a client response form from the retrieved client reminder;
>
> a communication link between said computer and the Internet;
>
> software executing on said computer for automatically transmitting the client response form to the client through said communication link; and
>
> software executing on said computer for automatically receiving a reply to the response form from the client through said communication link.

D.I. 1-1 at 6:54-7:8.

---

[2] WhitServe disagrees that claim 1 of the #468 patent is representative of the other claims. D.I. 18 at 3. But the Federal Circuit has previously determined, in a decision WhitSeve favorably cites here, that "Claim 1 of the #468 Patent is representative of the claims in the #468 Patent Family." *See Whitserve, LLC v. Computer Packages, Inc.*, 694 F.3d 10, 18 (Fed. Cir. 2012).

4

The other independent claims asserted against Defendants are, with a few caveats, essentially identical to claim 1 of the #468. The only meaningful difference between claim 1 of the #468 patent and claim 1 of #078 patent is that claim 1 of the #078 patent does not include the last limitation of claim 1 of the #468 patent regarding "automatically receiving a reply to the response form from the client." D.I. 1-2 at 8:4-22. Claim 24 of the #468 patent and claim 9 of the #078 patent are, in all meaningful respects, the same as claim 1 of the #468 patent, except directed towards a "method" instead of a "device." D.I. 1-1 at 10:8-24; D.I. 1-2 at 9:13-10:9. Finally, dependent claim 3 in the #078 patent narrows the device of claim 1 by limiting the form of the device to a webpage. D.I. 1-2 at 8:24. Similarly, claim 11 of #078 patent narrows the method in claim 9 by requiring that the step for generating a client response form comprises "generating of a webpage." D.I. 1-2 at 10:12-13.

## II.    STANDARD OF REVIEW

Under Rule 12(b)(6), a party may move to dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To survive the motion to dismiss, the complaint need not contain "detailed factual allegations," but it must contain sufficient factual matter to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp v. Twombly*, 550 U.S. 544, 555, 570 (2007)). In assessing the

5

plausibility of a claim, the Court must accept all well-pleaded factual allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff. *In re Rockefeller Ctr. Prop., Inc. Sec. Litig.*, 311 F.3d 198, 215 (3d Cir. 2002). The Court's review is limited to the allegations in the complaint, exhibits attached to the complaint, and documents incorporated by reference. *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010); *El-Hewie v. Bergen Cty.*, 348 F. App'x 790, 794 (3d Cir. 2009).

It is well-settled that courts may determine patent eligibility under § 101 at the Rule 12(b)(6) stage. *SAP Am., Inc. v. InvestPic, LLC*, 898 F.3d 1161, 1166 (Fed. Cir. 2018) (stating that patent eligibility "may be, and frequently has been, resolved on a Rule 12(b)(6) or (c) motion"); *FairWarning IP, LLC v. Iatric Sys., Inc.*, 839 F.3d 1089, 1097 (Fed. Cir. 2016) (stating that "it is possible and proper to determine patent eligibility under 35 U.S.C. § 101 on a Rule 12(b)(6) motion" (quoting *Genetic Techs. Ltd. v. Merial L.L.C.*, 818 F.3d 1369, 1373–74 (Fed. Cir. 2016)); *see also Voter Verified, Inc. v. Election Sys. & Software LLC*, 887 F.3d 1376, 1379 (Fed. Cir. 2018) (affirming Rule 12(b)(6) dismissal based on § 101 patent ineligibility); *Maxon, LLC v. Funai Corp.*, 726 F. App'x 797, 798 (Fed. Cir. 2018) (same). Determining eligibility at the pleadings stage is possible, however, "only when there are no factual allegations that, taken as true, prevent resolving the

eligibility question as a matter of law." *Aatrix Software, Inc. v. Green Shades Software, Inc.*, 882 F.3d 1121, 1125 (Fed. Cir. 2018).

## III.   DISCUSSION

Defendants have moved to dismiss the complaint on the grounds that the #468 and #078 patents are directed to an abstract idea and, therefore, ineligible for patent protection under 35 U.S.C. § 101.  In opposing Defendants' motion, WhitServe has raised three arguments: First, the #468 and #078 patents are not ineligible under § 101; second, a motion to dismiss based on § 101 is inappropriate at this stage of the proceedings; and, third, the validity of the claims has already been upheld by other courts and the United States Patent and Trademark Office ("USPTO").  Each argument is addressed in turn.

### A. Patent Eligibility under *Alice*

Section 101 of the Patent Act defines patent-eligible subject matter.  It provides: "Whoever invents or discovers any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof, may obtain a patent therefor, subject to the conditions and requirements of this title."  35 U.S.C. § 101.

There are three judicially-created limitations on the literal words of § 101. The Supreme Court has long held that laws of nature, natural phenomena, and abstract ideas are not patentable subject matter.  *Alice Corp. Pty. v. CLS Bank Int'l*,

7

573 U.S. 208, 216 (2014). These exceptions to patentable subject matter arise from the concern that the monopolization of "these basic tools of scientific and technological work" "might tend to impede innovation more than it would tend to promote it." *Id.* (internal quotation marks and citations omitted).

"[A]n invention is not rendered ineligible for patent [protection] simply because it involves an abstract concept[.]" *Id.* at 217. "[A]pplication[s] of such concepts to a new and useful end . . . remain eligible for patent protection." *Id.* (internal quotation marks and citations omitted). But in order "to transform an unpatentable law of nature [or abstract idea] into a patent-eligible application of such law [or abstract idea], one must do more than simply state the law of nature [or abstract idea] while adding the words 'apply it.'" *Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 566 U.S. 66, 71 (2012) (emphasis omitted).

In *Alice*, the Supreme Court made clear that the framework laid out in *Mayo* for determining if a patent claims eligible subject matter involves two steps. The Court must first determine whether the patent's claims are drawn to a patent-ineligible concept—i.e., are the claims directed to a law of nature, natural phenomenon, or abstract idea? 573 U.S. at 217. If the answer to this question is no, then the patent is not invalid for teaching ineligible subject matter. If the answer to this question is yes, then the Court must proceed to step two, where it considers "the elements of each claim both individually and as an ordered

8

combination" to determine if there is an "inventive concept—i.e., an element or combination of elements that is sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the [ineligible concept] itself." *Id.* at 217–18 (alteration in original) (internal quotations and citations omitted).[3]

### 1. Step One

Defendants contend that the #468 and #078 patents are directed to the abstract idea of preparing, sending, and receiving responses to due-date reminders for clients of professional-services clients. I agree. There is no "definitive rule" as to what constitutes an "abstract idea" under § 101. *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1334 (Fed. Cir. 2016). At its core, the "abstract ideas" exception "embodies 'the longstanding rule that an idea of itself is not patentable.'" *Alice*, 134 S. Ct. at 2355 (internal punctuation omitted) (quoting *Gottschalk v. Benson*,

---

[3] The Court in *Alice* literally said that this two-step framework is "for distinguishing patents that claim laws of nature, natural phenomena, and abstract ideas from those that claim patent-eligible applications of those concepts." 573 U.S. at 217. But as a matter of logic, I do not see how the first step of the *Alice/Mayo* framework can distinguish (or even help to distinguish) patents in terms of these two categories (i.e., the categories of (1) "patents that claim laws of nature, natural phenomena, and abstract ideas" and (2) patents "that claim patent-eligible applications of [laws of nature, natural phenomena, and abstract ideas]"). *Both* categories *by definition* claim laws of nature, natural phenomena, and abstract ideas; and only one of *Alice*'s steps (i.e., the second, "inventive concept" step) could distinguish the two categories. I therefore understand *Alice*'s two-step framework to be the framework by which courts are to distinguish patents that claim eligible subject matter under § 101 from patents that do not claim eligible subject matter under § 101.

9

409 U.S. 63, 67 (1972)). Nevertheless, the Supreme Court and the Federal Circuit have provided some guideposts. First, claims reciting "'method[s] of organizing human activity' are not patent-eligible because they are abstract ideas." *Smartflash LLC v. Apple Inc.*, 680 F. App'x 977, 982 (Fed. Cir. 2017) (quoting *Alice*, 134 S. Ct. at 2356). Second, courts should distinguish between claims "directed to an improvement to computer functionality"—which are not abstract—and claims "simply adding conventional computer components to well-known business practices"—which are abstract. *In re TLI Commc'ns LLC Patent Litig.*, 823 F.3d 607, 612 (Fed. Cir. 2016) (quoting *Enfish*, 822 F.3d at 1335). In navigating the parameters of an abstract idea, courts have generally sought to "compare claims at issue to those claims already found to be directed to an abstract idea in previous cases." *Enfish*, 822 F.3d at 1334. A review of precedential cases shows that the asserted claims here are directed to an abstract idea.

To start, the asserted claims recite in broad terms searching a database for client due dates, generating a client reminder regarding the upcoming due dates, sending the reminder to the client, and receiving the client's response. As the Federal Circuit explained, claims that recite receiving, storing, and selectively retrieving information to generate reports—as the claims here do—"describe[] little more than the automation of a 'method of organizing human activity.'" *In re Salwan*, 681 F. App'x 938, 941 (Fed. Cir. 2017). Because the claims are not

meaningfully different from other claims directed to methods of organizing human activity, they merely recite an abstract idea. *See Gust, Inc., v. Alphacap Ventures, LLC*, 905 F.3d 1321, 1336 (Fed. Cir. 2018) (claims that "merely recite a series of steps for storing and organizing investment data that could all be performed by humans without a computer" are "not meaningfully different from the ideas found to be abstract in other cases … involving methods of organizing human activity"); *Planet Bingo LLC v. VKGS LLC*, 576 F. App'x 1005, 1006 (Fed. Cir. 2014) (claims reciting computer-aided method and systems for "managing a game of Bingo" directed to the abstract idea of organizing human activity).

The asserted claims can also be read as reciting use of generic computer technology to automate a well-known business practice. The written description acknowledges that the claimed steps were already performed in the professional world, where "oftentimes an attorney must send a client a reminder, obtain authorization or possibly executed documents from the client and then take some action based on the client's response." D.I. 1-1 at 1:12-16. The asserted claims seek to "automatically deliver[]" these professional services with the aid of "a computer," "a database," "software," and a "communication link" through the Internet, but do not explain how such automation is implemented. It is readily apparent that the asserted claims provide for no more than generic computer components, because the patents provide no technical details or limitations with

11

respect to the components. At most, a few of the components, such as the "database" and "software," are described in terms of their routine functions. The database must "contain[] a plurality of client reminders." D.I. 1-1 at 2:37-38. The software is capable of "querying the database," "generating a client response form," "transmitting the client response form" through use of the Internet, and preferably "receiving a reply." *Id.* at 2:40-47. Storing data is a "generic computer function[]." *In re TLI Comm'ns LLC Patent Litig.*, 823 F.3d at 612. "[S]ending and receiving information" over a network are "routine computer functions." *Intellectual Ventures I LLC v. Erie Indem. Co.*, 850 F.3d 1315, 1329 (Fed. Cir. 2017).

The Federal Circuit has repeatedly held that claims reciting automation of a conventional business practice using generic computer technology are directed to an abstract idea. *See Return Mail, Inc. v. United States Postal Serv.*, 868 F.3d 1350, 1368 (Fed. Cir. 2017) (claims which recite an "existing business practice" performed "with the benefit of generic computing technology"—i.e., processing mail undeliverable due to an incorrect or obsolete address—are directed to an abstract idea); *In re Salwan*, 681 F. App'x at 941 (claims directed to automating the "conventional business practice" of billing insurance companies and organizing patient health information recite abstract idea); *Intellectual Ventures I LLC v. Symantec Corp.*, 838 F.3d 1307, 1318 (Fed. Cir. 2016) (claims reciting "a

conventional business practice—the screening of messages by corporate organizations—in the context of electronic communications" were directed to an abstract idea); *Shortridge v. Found. Constr. Payroll Serv., LLC*, 655 F. App'x 848, 852 (Fed. Cir. 2016) (claims directed to "use of a general purpose computer to perform [a] business method"—i.e., verifying to governing jurisdictions that the payroll was processed using certified payroll records—recite abstract idea); *Accenture Global Servs., GmbH v. Guidewire Software, Inc.*, 728 F.3d 1336, 1339, 1342 (Fed. Cir. 2013) (claims directed to automated methods for generating task lists to be performed by an insurance organization were directed to a patent-ineligible abstract idea). To survive § 101, WhitServe must do more than "merely recite the performance of some business practice known from the pre-Internet world along with the requirement to perform it on the Internet." *DDR Holdings, LLC v. Hotels.com, L.P.*, 773 F.3d 1245, 1257 (Fed. Cir. 2014).

WhitServe argues that the claims are far from abstract, because they recite a specific structure with physical components. D.I. 18 at 10. It is well-settled, however, that "mere recitation of concrete, tangible components is insufficient to confer patent eligibility to an otherwise abstract idea." *In re TLI Comm'ns LLC Patent Litig.*, 823 F.3d at 613; *Mortg. Grader, Inc. v. First Choice Loan Serv. Inc.*, 811 F.3d 1314, 1325 (Fed. Cir. 2016) ("[A]fter *Alice*, there can remain no doubt: recitation of generic computer limitations does not make an otherwise ineligible

13

claim patent-eligible." (quoting *DDR Holdings*, 773 F.3d at 1256) (alteration in

original)). As the Supreme Court explained, "[g]iven the ubiquity of computers,

wholly generic computer implementation is not generally the sort of 'additional

feature' that provides any 'practical assurance that the process is more than a

drafting effort designed to monopolize the abstract idea itself.'" *Alice*, 134 S. Ct.

at 2358 (internal citations and punctuation omitted) (quoting *Mayo*, 566 U.S. at

77).

Indeed, courts have repeatedly found that the specific components recited

here—"a computer," "a database," "software," and a "communication link"

through the Internet—were not enough to render the claims nonabstract. *See Alice*,

134 S. Ct. at 2360 (claims reciting "a general-purpose digital computer" are

nevertheless "directed to" an abstract idea); *Mortg. Grader*, 811 F.3d at 1324–25

(claims reciting an "interface," "network," and a "database" are nevertheless

directed to an abstract idea); *Symantec*, 838 F.3d at 1320 ("performance of an

abstract idea on the Internet is abstract"); *DDR Holdings*, 773 F.3d at 1256

(collecting cases where claims that "recited various computer hardware elements"

were nevertheless "directed to nothing more than the performance of an abstract

business practice on the Internet or using a conventional computer").

WhitServe further argues that the claims are not abstract, because the "client

response form" and "client reminder date field" are specific and particularized to

each client. D.I. 18 at 10-11. But the Federal Circuit has repeatedly held that "tailoring of content based on information about the user…is an abstract idea." *Evolutionary Intelligence LLC v. Sprint Nextel Corp.*, 677 F. App'x 679, 680 (Fed. Cir. 2017) (quoting *Affinity Labs of Texas, LLC v. Amazon.com Inc.*, 838 F.3d 1266, 1271 (Fed. Cir. 2016)); *Intellectual Ventures I LLC v. Capital One Bank*, 792 F.3d 1363, 1369 (Fed. Cir. 2015) (concluding that a patent directed to "customizing web page content" based upon "information known about the user" not patent eligible). As the Federal Circuit explained, "information tailoring is 'a fundamental … practice long prevalent in our system.'" *Capital One*, 792 F.3d at 1369 (ellipses in original) (quoting *Alice*, 134 S. Ct. at 2356).

Finally, the claims are not directed to an improvement in computer functionality. According to the written description, the problem facing the inventor was the time-consuming and tedious nature of tracking, generating, sending, and receiving responses to client reminders about upcoming due dates. The written description states that the claimed invention seeks to "improve[] the speed, efficiency, and reliability of performing services for clients" by combining into one device the previously disparate methods of performing these tasks. But "mere automation of manual processes using generic computers does not constitute a patentable improvement in computer technology." *Credit Acceptance Corp. v. Westlake Servs.*, 859 F.3d 1044, 1055 (Fed. Cir. 2016).

## 2. Step Two

In step two of *Alice*, the elements of the claim are considered, both individually and as an ordered combination, to assess whether the additional elements transform the nature of the claim into a patent-eligible application of the abstract idea. *Content Extraction & Transmission LLC v. Wells Fargo Bank*, 776 F.3d 1343, 1347 (Fed. Cir. 2014). To save a patent at step two, an inventive concept "must be evident in the claims." *Two-Way Media Ltd. v. Comcast Cable Commc'ns, LLC*, 874 F.3d 1329, 1338 (Fed. Cir. 2017).

Here, the claims elements, considered both individually and as an ordered combination, recite nothing more than "generic computer components employed in a customary manner," which is insufficient to transform an abstract idea into a patent-eligible invention. *Audatex N. Am., Inc. v. Mitchell Int'l, Inc.*, 703 F. App'x 986, 990 (Fed. Cir. 2017); *Mortg. Grader*, 811 F.3d at 1324–25 (holding that generic computer components such as an "interface," "network," and "database" fail to satisfy the "inventive concept requirement"); *Capital One*, 792 F.3d at 1369 ("Instructing one to 'apply' an abstract idea and reciting no more than generic computer elements performing generic computer tasks does not make an abstract idea patent-eligible."); *Ultramercial, Inc. v. Hulu, LLC*, 772 F.3d 709, 716 (Fed. Cir. 2014) ("The claims' invocation of the Internet … adds no inventive concept.").

16

WhitServe argues that the invention allows for "faster and simpler communication." D.I. 18 at 16-17. But "claiming the improved speed or efficiency inherent with applying the abstract idea on a computer" does not provide a sufficient inventive concept. *Capital One*, 792 F.3d at 1367 ("[T]he fact that the web-site returns the pre-designed ad more quickly than a newspaper could send the user a location-specific advertisement insert does not confer patent eligibility"); *Audatex*, 703 F. App'x at 990 ("[U]se of the Internet to increase the speed and efficiency of an abstract process ... is not enough.").

WhitServe also contends that dependent claim 3 of #078 patent adds an inventive concept by requiring that the form of the invention be a web page. D.I. 18 at 16-17. This additional limitation, however, merely limits the claims to a particular technological environment, which does not confer patent eligibility on an abstract concept. *See Alice*, 134 S. Ct. at 2358 (limiting the use of an abstract idea "to a particular technological environment" cannot transform it into a patent-eligible invention); *VideoShare, LLC v. Google, Inc.*, 2016 WL 4137524 at *9 (D. Del. Aug. 2, 2016) (limiting abstract claims "to a particular technological environment, such as computer networks or a web page, does not provide an inventive concept") *aff'd* 695 F. App'x 577 (Fed. Cir. 2017).

## B. Patent Eligibility under *Berkheimer* and *Aatrix*

WhitServe also seeks to bring this case within the scope of the Federal Circuit's decisions in *Berkheimer* and *Aatrix*, which generally held that factual issues precluded a determination that the claims were patent ineligible. I find, however, that neither case is applicable here. In *Berkheimer*, the Federal Circuit affirmed in part and reversed in part a district court's grant of summary judgment on patent ineligibility grounds. *Berkheimer v. HP Inc.*, 881 F.3d 1360, 1362 (Fed. Cir. 2018). At step one of the eligibility analysis, the Federal Circuit agreed that each claim was directed to an abstract idea. *Id.* at 1366. At step two, however, the Federal Circuit disagreed with the district court's conclusion that the claims recited only "well-understood, routine, and conventional" computer functions. *Id.* at 1368. As the Federal Circuit explained, the defendant offered no evidence that the claimed invention was well-understood, routine, and conventional. *Id.* At the same time, the written description "describe[d] an inventive feature that stores parsed data in a purportedly unconventional manner." *Id.* at 1369. And, three of the eight claims "contain[ed] limitations directed to the arguably unconventional inventive concept described in the specification." *Id.* at 1370. Thus, the written description in conjunction with certain claims raised a factual dispute regarding the presence of an inventive concept, which made summary judgement inappropriate at that time. *Id.* at 1369-70. In sum, under *Berkheimer*, improvements in

18

technology described in the written description and captured in the claims may create fact questions which preclude finding a patent ineligible as a matter of law.

In *Aatrix*, the district court granted a motion to dismiss on § 101 grounds and denied leave to amend. *Aatrix Software, Inc. v. Green Shades Software, Inc.*, 882 F.3d 1121, 1123 (Fed. Cir. 2018). The Federal Circuit vacated the dismissal and reversed the denial of leave. *Id.* As the Federal Circuit explained, the proposed second amended complaint contained "numerous" and "specific" factual allegations directed to problems in computer functionality that were "solved by the Aatrix patented inventions." *Id.* at 1127. For example, the second amended complaint alleged that "the claimed software uses less memory, results in faster processing speed, and reduces the risk of thrashing which makes the computer process forms more efficiently." *Id.* Similarly, allegations about the data file claimed "an improvement in importing data from third-party software." *Id.* Because these allegations, taken as true, "suggest[ed] that the claimed invention [was] directed to an improvement in the computer technology itself," the district court erred in finding, on a motion to dismiss, that the claimed invention was conventional and routine. *Id.* at 1127-28.

Here, *Berkheimer* and *Aatrix* are inapplicable because neither the patent nor the complaint alleges any improvement in technology. Rather, the patent describes improving the speed and efficiency with which humans deliver professional

19

services by automating that practice through use of generic computer components performing routine functions.

### C. Prior Court and USPTO Decisions

In opposing Defendants' motion, WhitServe suggests that this Court should decline to consider the patent eligibility of the asserted claims under § 101, because the issue has already been addressed by the USPTO and two other courts. D.I. 18 at 3-5. There are several problems, however, with WhitServe's assertion.

First, all of the USPTO proceedings WhitServe cites occurred before the Supreme Court's decision in *Alice* and, therefore, were not based on the correct legal standard. *See id.* at 3; D.I. 1-1; D.I. 1-2.

Second, the Federal Circuit's decision in *WhitServe LLC v. Computer Packages, Inc.* was likewise issued before *Alice*. 694 F.3d 10, 39 (Fed. Cir. 2012). More important, the only discussion of § 101 in that case is dicta that appears in the dissent. 694 F.3d 10, 39 (Fed. Cir. 2012). Even if I were to consider the dicta, it sets forth a position unfavorable to WhitServe. Specifically, the dissent argued that there could be no infringement of the #468 and #078 patents (as the majority affirmed) because the patents are "barred at the threshold by 35 U.S.C. § 101." *Id.* (internal punctuation omitted) (quoting *Diamond v. Diehr*, 450 U.S. 175, 188 (1981)). Specifically, the patents "are directed to the abstract idea that it is useful

20

to provide people with reminders of approaching due dates and deadlines."
*WhitServe*, 694 F.3d at 39.

Third, the district court in *WhitServe v. GoDaddy.com, Inc.*, No. 3:11-cv-948-JCH (D. Conn.) never substantively addressed the § 101 issue. Pre-*Alice*, the court denied GoDaddy's motion for summary judgment without an opinion and without providing any comment on the § 101 issue. C.A. No. 3:11-948 at D.I. 304. Post-*Alice*, the court denied leave to file a renewed motion for summary judgment. *Id.* at D.I. 337. Then, the case settled before the court determined patent eligibility at trial. *Id.* at D.I. 433. Because the patent eligibility of the #468 and #078 patents has not yet been decided under the current legal standard for § 101 by either the USPTO or other courts, there is no prior decision—binding or otherwise—that I must take into consideration before rendering my decision. For these reasons, I find that this argument by WhitServe has no merit.

## IV.    CONCLUSION

For the foregoing reasons, Defendants' motions to dismiss (C.A. No. 18-193 at D.I. 12; C.A. No. 18-194 at D.I. 10) are granted. An appropriate order will be entered.

Dated: July 8, 2019

_____
UNITED STATES DISTRICT JUDGE